UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

GOVERNMENT EMPLOYEES INSURANCE
CO., *et al.*,

                              Plaintiffs,

                    -against-

PARK SLOPE MEDICAL AND SURGICAL
SUPPLY, INC., *et al.*,

                              Defendants.
-------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  SEP 13 2013  ★

BROOKLYN OFFICE

**ORDER ADOPTING
<u>REPORT AND RECOMMENDATION</u>**

11-CV-4028 (SLT) (RER)

**TOWNES, United States District Judge:**

On July 15 and 25, 2013, Magistrate Judge Reyes filed reports and recommendations

relating to two of the five fraudulent schemes at issue in this action.  Since this Court has not

received any objections to those two reports and recommendations, this Court adopts those

reports and recommendations, except to the extent that they recommend that this Court enter a

partial judgment at this time.  To the extent that Plaintiffs wish this Court to enter a partial

judgment pursuant to Fed. R. Civ. P. 54(b), Plaintiffs may submit supplemental papers

explaining why there is no just reason for delaying the entry of judgment until all claims have

been resolved against the remaining parties to this action.

## *BACKGROUND*

In August 2011, plaintiffs Government Employees Insurance Co., GEICO Indemnity Co.,

GEICO General Insurance Company and GEICO Casualty Co. (collectively, "Plaintiffs") – all of

which are insurance companies – commenced this action against 11 retailers and 14 wholesalers

of durable medical equipment and orthopedic devices, alleging that these defendants engaged in

"a series of interrelated, massive fraudulent schemes" which involved submitting insurance

claims to Plaintiffs for high-quality equipment and devices while supplying those insured by Plaintiffs with lower-quality products. Complaint, ¶ 38. The Complaint alleges a total of five such schemes, each perpetrated by one of five retail corporations and their principals. Specifically, the Complaint alleges (1) a "Park Slope Scheme," involving defendant Park Slope Medical and Surgical Supply, Inc. ("Park Slope"), and its owners, defendants Mikhail Kremarman and Ruslan Alyas (*id.*, ¶¶ 48-53); (2) an "Alev Scheme," involving defendant Alev Medical Supply, Inc. ("Alev"), and its owner, defendant Yury Aleksandrovich (*id.*, ¶¶ 54-59); (3) an "Alrof Scheme," involving defendant Alrof, Inc. ("Alrof"), and its owner, defendant Robert Finkelshteyn (*id.*, ¶¶ 60-65); (4) a "Yklik Scheme," involving defendant Yklik, Inc. ("Yklik"), and its owner, Yefin Klikshieyn (*id.*, ¶¶ 66-71); and (5) a "Heal Supply Scheme," involving defendant Heal Supply, Inc. ("Heal Supply"), and its owner Vladimir Yepifanov (*id.*, ¶¶ 72-77).

According to the Complaint, all five of these schemes operated in the same way. Through the use of "kickbacks," a retail corporation and/or its principal(s) induced physicians and chiropractors who frequently treat drivers insured by Plaintiffs (the "Insured") to prescribe "large amounts" of durable medical equipment and orthotic devices which are not covered by the New York State Medicaid fee schedule (*id.*, ¶¶ 39-40). Those prescriptions were not given to the Insureds, but sent directly to the retail corporation to ensure that the Insured did not have an opportunity to fill the prescriptions with other retailers (*id.*, ¶ 39). The retail corporation then filled the prescriptions by obtaining low-cost, low-quality equipment and orthotics from a wholesaler and dispensing these items to the Insured (*id.*, ¶ 42).

In exchange for a share in the profits of the fraud, the wholesaler provided invoices which failed to adequately describe the products dispensed and reflected an inflated price for the

2

products (*id.*, ¶¶ 42-43). The retail corporation then issued a check for the face amount of the invoice and sent the inflated invoice and a copy of the check to one of the Plaintiffs for reimbursement (*id.*, ¶ 44). If the wholesaler cashed the retail corporation's check, the wholesaler would subsequently rebate a portion of the proceeds so that both the retailer and wholesaler would profit from the scheme (*id.*, ¶ 44).

If the durable medical equipment or orthotics are not covered by the New York State Medicaid fee schedule, an insurance company is required to reimburse the lesser of either "the acquisition cost . . . to the provider plus 50 percent, or the usual and customary price charged to the general public" (*id.*, ¶ 36) (emphasis omitted). Since the invoice and check received from the retail corporation indicated that the retailer had acquired and dispensed a more expensive product than was actually provided, Plaintiffs reimbursed the retailer for more than the actual or usual and customary price of the item provided. Thus, the schemers were able to net the difference between the inflated amount paid by the insurance company and the actual cost of the low-quality product provided.

Although each of the five schemes alleged in Plaintiffs' Complaint involved a different retail corporation, the wholesalers involved in the various schemes were often the same. For example, the Alev Scheme allegedly involved three wholesalers: defendants MDSS Wholesale, Inc. ("MDSS"), Bener Wholesale, Inc. ("Bener"), and Galasa Wholesale, Inc. ("Galasa") (*id.*, ¶¶ 54-59). The Alrof Scheme allegedly involved MDSS and Bener (*id.*, ¶¶ 60-65), while the Heal Supply Scheme is alleged to have involved Bener and another wholesaler, defendant Devonian, Inc. ("Devonian") (*id.*, ¶¶ 72-77).

3

***The Complaint***

Plaintiffs' complaint, filed in mid-August 2011, names a total of 25 defendants: 11 "Retail Defendants," consisting of the five retail corporations and their principals, and 14 "Wholesale Defendants," consisting of seven wholesale corporations and their principals. The complaint also alleges a total of 26 causes of action. The first cause of action seeks a judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that the five retail corporations "have no right to receive payment for any pending bills they have submitted" (*id.*, ¶ 85). The remaining 25 causes of action raise five nearly identical claims against the participants in each of the five schemes. The second, seventh, twelfth, seventeenth and twenty-second causes of action accuse the principals of each of the retail corporations of a civil RICO violation. The third, eighth, thirteenth, eighteenth, and twenty-third causes of action allege that these principals and the Wholesale Defendants who participated in their respective schemes conspired to violate the civil RICO statute, 18 U.S.C. § 1962. The fourth, ninth, fourteenth, nineteenth, and twenty-fourth causes of action allege that each retail corporation and its principal(s) engaged in common-law fraud. The fifth, tenth, fifteenth, twentieth, and twenty-fifth causes of action advance unjust enrichment claims against each retail corporation and its principal(s). Finally, the sixth, eleventh, sixteenth, twenty-first and twenty-sixth causes of action allege that the Wholesale Defendants who participated in the respective schemes aided and abetted the respective Retail Defendants' fraud.

***The Procedural History of this Case***

To date, 11 of the 14 Wholesale Defendants have been served with process. The principals of three of the seven wholesale corporations – MDSS, Bener and Galasa – are named

4

as Doe Defendants and have not yet been identified or served. In contrast, all of the Retail Defendants have been served except Yury Aleksandrovich, the principal of Alev.

Of the 11 Wholesale Defendants who have been served with process, only three have answered or otherwise responded to Plaintiffs' complaint. Virra Wholesale, Inc., and its principal. Viktoriya Fitsaylo, answered the complaint and are currently litigating the claims against them. In addition, Vladislav Dyatlov – alleged by Plaintiffs to be a principal of Dianna Ko, Inc. – answered the complaint and was dismissed from the action by a stipulation of dismissal filed in December 2011. The Clerk of Court has entered a default against the other eight Wholesale Defendants.

Of the 10 Retail Defendants who were served with process, five have been dismissed from the action. In November 2011, Plaintiffs stipulated to discontinuing this action against Park Slope and its principals, Mikhail Kremarman and Ruslan Alyas. In May 2013, Plaintiffs voluntarily dismissed their claims against Yklik and its principal, Yefin Klikshieyn.

Four of the remaining five Retail Defendants – Alrof and its principal, Robert Finkelshteyn, and Heal Supply and its principal, Vladimir Yepifanov – never answered or otherwise responded to the summons and complaint. In addition, although Alev filed a late answer to the complaint, Alev subsequently became unrepresented and failed to retain new counsel. The Clerk of Court entered defaults against these five defendants on November 28, 2011.

***The Instant Motions for Default Judgments***

In November 2012, Plaintiffs moved for a default judgment against the four alleged participants in the Alrof Scheme: Alrof; its principal, Robert Finkelshteyn; and wholesale

5

corporations MDSS and Bener. Almost exactly three months later, Plaintiffs moved for a default judgment against four of the alleged participants in the Alev Scheme: Alev and wholesale corporations MDSS, Bener, and Galasa. However, Plaintiffs have not yet moved for a default judgment against the participants in the Heal Supply Scheme – which is alleged to have involved Heal Supply; its principal, Vladimir Yepifanov; Bener; Devonian and its principal, Michael Zavrazhin – even though the Clerk of Court entered defaults against these parties at the same time he entered defaults against the alleged participants of the Alrof and Alev Schemes.

The two motions for a default judgment differ in some respects. The motion relating to the Alrof Scheme addresses all six causes of action relating to that scheme, including the civil RICO claims. In contrast, the motion relating to the Alev Scheme does not address the civil RICO causes of action. Neither motion states that Plaintiffs are seeking a partial judgment or addresses the question of whether there is no just reason for delaying the entry of partial judgment.

By orders dated January 22 and February 20, 2013, this Court referred both of Plaintiffs' motions for a default judgment to Magistrate Judge Reyes for a report and recommendation. On July 12, 2013, Judge Reyes issued his report and recommendation with respect to the Alev Scheme (the "Alev R&R"). One week later, Judge Reyes issued his report and recommendation with respect to the Alev Scheme (the "Alrof R&R").

Since both the Alev R&R and the Alrof R&R address similar claims, the two R&Rs bear some similarities. Both R&Rs recommend that this Court "enter a declaratory judgment that

6

Plaintiffs are neither obligated to pay nor are liable for the outstanding claims submitted" by Alev and Alrof, respectively (Alev R&R at 19; Alrof R&R at 26). In addition, both R&Rs recommend that this Court "enter a judgment" finding the defendants liable under the various causes of action addressed in the motions (Alev R&R at 18; Alrof R&R at 25). The Alrof R&R recommends entering a judgment "that MDSS . . . and Bener . . . are liable for aiding and abetting fraud, that Alrof . . . and Robert Finkelshteyn are liable for common law fraud and unjust enrichment, that Robert Finkelshteyn is liable for civil RICO damages, and that MDSS . . . , Bener . . . , and Robert Finkelshteyn are liable for civil RICO conspiracy damages" (Alrof R&R at 25). The Alev R&R recommends entering a judgment "that Alev . . . is liable for common law fraud and unjust enrichment; and that MDSS . . . , Galasa . . . , and Bener . . . are liable for aiding and abetting fraud" (Alev R&R at 18).

The R&Rs also recommend that the Plaintiffs be awarded compensatory damages and prejudgment interest. The Alev R&R recommends "that Plaintiffs be awarded $660,433.37, comprised of $443,646.69 in compensatory damages and $216,786.68 in prejudgment interest, with $106.93 in per diem interest from the date of [the R&R] until the date of entry of judgment against defendants Alev . . . , MDSS . . . , Galasa . . . , and Bener . . . , jointly and severally" (Alev R&R at 18-19). The Alrof R&R recommends that Plaintiffs be awarded $645,438.98, comprised of $424,713.84 in compensatory damages and $220,725.14 in prejudgment interest, with $104.72 in per diem interest from the date of the R&R until the date of entry of judgment against defendant Alrof (Alrof R&R at 25-26). The Alrof R&R further recommends that Plaintiffs be awarded $1,274,141.52 against the other three defendants – MDSS, Bener and

Robert Finkelshteyn – with each of these three defendants being jointly and severally liable for that amount (*Id.*).

Both R&Rs direct Plaintiffs to serve copies of the report and recommendation on defendants by certified mail (Alev R&R at 19; Alrof R&R at 26). In addition, both R&Rs advise defendants that they have 14 days from their receipt of the R&R in which to file objections (*Id.*). Finally, the R&Rs both warn defendants that failure to file timely objections may result in waiver of the right to appeal a district court order adopting the R&R (*Id.*).

According to affidavits filed by Plaintiffs, Plaintiffs served the Alev R&R on the participants in the Alev Scheme via certified mail on July 15, 2013, and served the Alrof R&R on the participants in the Alrof Scheme via certified mail on July 25, 2013. Indeed, plaintiffs served two copies of the Alrof R&R on Alrof, mailing one copy to the wholesale corporation's last known address and one copy to the New York Secretary of State for delivery to Alrof. The copy mailed to Alrof's last known address was subsequently returned as undeliverable, but the copy sent to the Secretary of State was not returned.[1] To date none of the defendants have filed any objections to either R&R.

---

[1] This Court takes judicial notice of the fact that the New York Department of State's records indicate that Alrof was dissolved by proclamation on July 27, 2011. *See* http://appext20. dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=3488134&p_co rpid=3475863&p_entity_name=%61%6C%72%6F%66%20&p_name_type=%25&p_search_typ e=%42%45%47%49%4E%53&p_srch_results_page=0. However, even assuming that the Secretary of State never delivered the R&R to Alrof, Plaintiffs' service of the R&R on Alrof was nonetheless sufficient. Rule 5(b) of the Federal Rules of Civil Procedure provides that service on a party may be effected by, among other methods, mailing it to the party's last known address, "in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C).

## *DISCUSSION*

A district court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150(1985). Accordingly, in the absence of any objections, this Court adopts both R&Rs, except to the extent that they recommend that a partial judgment be entered at this time. As explained below, neither the motions for default judgment nor the R&Rs provide the information necessary for this Court to determine whether to enter a partial judgment.

"[I]n the federal district courts, the entry of a final judgment is generally appropriate 'only after all claims have been adjudicated.'" *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)). Rule 54(b) of the Federal Rules of Civil Procedure provides "an exception to this general principle," *id.*, permitting a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The Second Circuit has counseled, however, that the historic "policy against piecemeal appeals 'requires that the court's power to enter such a final judgment before the entire case is concluded . . . be exercised sparingly.'" *Novick*, 642 F.3d at 310 (quoting *Harriscom Svenska AB*, 947 F.2d at 629).

Although Rule 54(b) does not expressly require a statement of reasons underlying a district court's decision to enter partial judgment, the Second Circuit and other courts in this Circuit "have interpreted Rule 54(b) . . . more strictly than the Rule's language requires." *In re Chateaugay Corp.*, 928 F.2d 63, 64 (2d Cir. 1991) (per curiam). Under Second Circuit case law, "a district court cannot merely announce that 'there is no just reason for delay.'" *Id.* (quoting

*Pension Benefit Guarantee Corp. v. LTV Corp. (PBGC)*, 875 F.2d 1008, 1014 (2d Cir. 1989), *rev'd on other grounds*, 496 U.S. 633 (1990)). Rather, the district court must consider (1) "the policy against piecemeal appeals" and (2) "the equities between or among the parties," and "must provide a reasoned, even if brief, explanation of its considerations." *Novick*, 642 F.3d at 310 (internal quotations and citations omitted).

Since Plaintiffs' motions for default judgment and Judge Reyes' reports and recommendations do not address the question of whether this Court should enter partial judgments against the participants in the Alrof and Alev Schemes, this Court will not direct the Clerk of Court to enter judgment at this time. To the extent that Plaintiffs wish this Court to enter a partial judgment pursuant to Rule 54(b), Plaintiffs may submit supplemental papers explaining why there is no just reason for delaying the entry of final judgment until all claims have been resolved. Those papers should explain, *inter alia*, why Plaintiffs have yet to move for a default judgment against the participants in the Heal Supply Scheme and whether it would be equitable to enter a judgment against all participants in the Alrof and Alev Schemes before entering judgment against the participants in the Heal Supply Scheme.

### *CONCLUSION*

For the reasons set forth above, this Court adopts Magistrate Judge Reyes's reports and recommendations dated July 15, 2013, and July 25, 2013, except to the extent that they recommend that a partial judgment be entered at this time. To the extent that Plaintiffs wish this Court to enter a partial judgment pursuant to Fed. R. Civ. P. 54(b), Plaintiffs may submit supplemental papers explaining why there is no just reason for delaying the entry of judgment until all claims have been resolved against the remaining parties to this action. If Plaintiffs elect

10

to submit such papers, this Court will set a briefing schedule, affording all defendants an

opportunity to respond.

      **SO ORDERED**.

                       /s/(SLT)

                       SANDRA L. TOWNES
                       United States District Judge

Dated: September *11*, 2013
       Brooklyn, New York